UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| **ARCHETYPES, INC.** | ) | Case No. 13-12874 |
|  | ) |  |
| Debtor.[1] | ) |  |
|  | ) |  |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
PURSUANT TO 11 U.S.C. SECTIONS 105, 361, 362, AND 364 AND
RULES 2002, 4001 AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY
PROCEDURE AND LOCAL BANKRUPTCY RULES 2002-1 AND 4001-2
(1) AUTHORIZING INCURRENCE BY THE DEBTOR OF POST-PETITION
SECURED INDEBTEDNESS WITH ADMINISTRATIVE SUPERPRIORITY,
(2) GRANTING LIENS, (3) AUTHORIZING USE OF CASH COLLATERAL
BY THE DEBTOR AND PROVIDING FOR ADEQUATE PROTECTION, (4)
MODIFYING THE AUTOMATIC STAY, AND (5) SCHEDULING A FINAL HEARING**

The above captioned debtor and debtor in possession (the "Debtor"), by and through its undersigned proposed counsel, hereby submits this motion (the "Motion") for the entry of interim and final orders (together, the "DIP Orders") authorizing the Debtor to, among other things: (i) obtain post-petition financing pursuant to sections 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3) and 507 of the Bankruptcy Code in the amount of up to $1,250,000 (the "DIP Facility"); (ii) use cash collateral pursuant to section 363 of the Bankruptcy Code; and (iii) grant adequate protection pursuant to sections 361, 362, 363, 364, and 507 of the Bankruptcy Code to the holders of the Debtor's prepetition secured notes (the "Prepetition Lenders"). Pending a final hearing on this Motion (the "Final Hearing"), the financing will be implemented on an interim basis pursuant to the Line Letter Agreement (the "Line Letter") and Grid Note, substantially in the form attached hereto as **Exhibits "A"** and "**B**", respectively between the DIP Lender

---

[1] The last four digits of the Debtor's federal tax identification number are 0332. The Debtor's headquarters and mailing address is 1441 Broadway, 3rd Floor, Suite 3001 & 3002, New York, NY 10018

1

(defined below) and the Debtor (collectively, the "DIP Loan Agreement"). A copy of the proposed interim order (the "Interim DIP Order") is attached hereto as **Exhibit "C"**.

This Motion is supported by the *Notice Of Hearing On First Day Motions* (the "Omnibus Notice"), the *Declaration of Thomas L. Gallagher in Support of Chapter 11 Petition and First Day Motions* (the "Omnibus Declaration"), filed concurrently herewith and incorporated herein by reference, the pleadings and papers on file herein, and upon such oral and documentary evidence as may be presented at the hearing on the Motion.

## BANKRUPTCY RULE 4001 CONCISE STATEMENT

1. Material provisions of the DIP Loan Agreement are set forth in the following sections of the DIP Loan Agreement and/or the Interim DIP Order:[2]

   (a)   ***Borrower:***  Archetypes, Inc.

   (b)   ***Post-Petition Lender:***  CC Bridge Lender, LLC as postpetition lender (the "DIP Lender").[3]

   (c)   ***Maximum Borrowing Available.***  The maximum amount available to the Debtor under the DIP Loan Agreement is $1,250,000. Grid Note, page 1 and Interim DIP Order, ¶ 2.

   (d)   ***Use of Proceeds.***  The proceeds shall be used (a) solely for (i) working capital and general corporate purposes and (ii) payment of costs of administration of the Debtor's bankruptcy case, to the extent set forth in the Budget and the Carve-Out. Grid Note, page 4 and Interim DIP Order ¶2 and 5.

   (e)   ***Interest Rate.***  The DIP loans shall bear interest at a rate equal to 4.25%; provided, that following an Event of Default, this Note shall bear interest at a

---

[2] All terms used but not defined herein shall have the meanings ascribed to them in the DIP Loan Agreement. The summaries and descriptions of the terms and conditions of the DIP Loan Agreement and the Interim DIP Order set forth in this motion are intended solely for informational purposes to provide the Court and parties in interest with an overview of significant terms thereof and should only be relied upon as such. The summaries and descriptions are qualified in their entirety by the DIP Loan Agreement and the Interim DIP Order. In the event that there is a conflict between this motion and the DIP Loan Agreement or the Interim DIP Order, the DIP Loan Agreement or the Interim DIP Order, as applicable, shall control in all respects.

[3] As set forth in ¶ 8 hereto and in the Omnibus Declaration at ¶¶ 14-17 and **Exhibit "B"**, CC Bridge Lender, LLC holds pre-petition secured debt and third priority junior secured debt.

        fixed rate of 6.25% until such Event of Default is cured or waived.  Grid Note, Page 1.

(f)    *Termination Date.*  The DIP Facility will expire and become immediately due and payable upon the date (the "Termination Date") that is the earliest to occur of (i) January 31, 2014, (ii) the date of the closing of the Transaction or similar sale of all or a portion of the Company's assets, (iii) the effective date of a plan of reorganization in the Debtor's bankruptcy case and (iv) the occurrence of an Event of Default.  Line Letter, page 2 and Grid Note, page 1.

(g)    *Events of Default.* Customary for facilities of this type, including (i) a default in payment of any amount due under the DIP Loan Agreement or in the payment or performance of any other obligation or agreement of any nature or description to or with the DIP Lender; (ii) any representation or warranty set forth in the DIP Facility or the Asset Purchase Agreement or any other instrument or agreement with or in favor of DIP Lender shall prove to be inaccurate or untrue; (iii) the granting of any security interest by the Debtor with respect to its assets (other than to the DIP Lender or as otherwise permitted by Lender in writing); (iv) the Debtor obtaining any additional financing pursuant to sections 364(c) or (d) of the Bankruptcy Code without the DIP Lender's consent; (v) the Debtor incurring any obligation senior to or pari passu with the DIP obligations; (vi) the filing of a disclosure statement with respect to or the confirmation of any plan or reorganization in the bankruptcy case that does not provide for the indefeasible payment in full of all of the DIP obligations; (vii) the payment of or agreement to pay any of the Debtor's prepetition obligations prior to the indefeasible payment in full of the DIP obligations except with the DIP Lender's consent and pursuant to the Budget; (viii) the dismissal of the Debtor's chapter 11 case or the conversion of such case to a case under chapter 7 of the Bankruptcy Code; (ix) the entry of an order in the Debtor's chapter 11 case avoiding any of the DIP obligations or requiring repayment of any portion of a payment made by the Debtor on account of the DIP obligations;  (x) the Debtor's failure to furnish any requested financial information or failing to permit inspection of books or records by Lender or any of its agents, attorneys or accountants; (xi) the failure to occur of any of the sale milestones; (xii) the Debtor's failure to perform any of its obligations under the Asset Purchase Agreement, the DIP Orders or the Bid Procedures Order (as defined in the Asset Purchase Agreement); (xiii) the approval by the Bankruptcy Court of any competing transaction to that set forth in the Asset Purchase Agreement; (xiv) the Debtor withdrawing the Motion; (xv) the breach of any covenant or the occurrence of a default or event of default under the DIP Facility or any other instrument or agreement entered into in connection with this Note, including, without limitation, failure to strictly comply with the Budget; or (xvi) any order shall be entered reversing, amending, supplementing, staying for a period in excess of five (5) business days, vacating or otherwise modifying in any material respect the DIP Orders without the prior written consent of the DIP Lender.  Grid Note, pages 5-7.

(h)    *Liens.* (i) Valid, binding, continuing, enforceable, fully perfected and unavoidable fourth priority security interests in, and liens upon, all prepetition and postpetition

assets of the Debtor, whether now existing or hereafter acquired, including, without limitation, all inventory, intellectual property, general intangibles receivables, equipment, fixtures, investment property, deposit accounts, shares, records, and other goods and personal property that are subject to the liens (the "Prepetition Liens") of the Debtor's prepetition lenders; and (ii) subject only to the Carve-Out, valid, binding, continuing, enforceable, fully perfected and unavoidable first priority liens on all prepetition assets and postpetition assets of the Debtor that are not subject to the Prepetition Liens, whether now existing or hereafter acquired, including all inventory, intellectual property, general intangibles receivables, equipment, fixtures, investment property, deposit accounts, shares, records, and other goods and personal property, and to the extent not otherwise included, all proceeds, tort claims, insurance claims, and other rights to payments not otherwise included in the foregoing and products of the foregoing and all accessions to, substitutions and replacements for, and rents and profits of, each of the foregoing (excluding any Avoidance Actions and proceeds thereof, but including claims arising under section 549 of the Bankruptcy Code and proceeds thereof) (collectively, the "Collateral"), as provided for by section 364(c) of the Bankruptcy Code ((i) and (ii) collectively, the "DIP Liens"). Line Letter, page 1, Interim DIP Order, ¶ 4.

(i) *Fees.* In consideration for the commitment to make loans and advances to the Borrowers under the DIP Facility, the Debtor must pay to the DIP Lender a commitment fee in the amount of $50,000; provided, however, that the DIP Lender agrees to waive its right to payment of the Commitment Fee if the Transaction closes on or before January 31, 2014. Grid Note, page 4.

2. The Debtor believes the following provisions of the DIP Loan Agreement must be highlighted pursuant to Local Rule 4001-2:

   i. ***Binding the Estate to Validity, Perfection, or Amount of Secured Creditor's Pre-Petition Lien.*** Interim DIP Order ¶¶ D and 6.

   ii. ***Waiver of Rights of Estate Under Section 506(c) as to the Final DIP Order.*** Interim DIP Order ¶ 7.

   iii. ***Grant to Prepetition Secured Creditor Liens on the Debtor's Claims Under Section 549 of the Bankruptcy Code.*** Interim DIP Order ¶ 8.

3. The provisions of the DIP Loan Agreement were extensively negotiated. The DIP Loan Agreement enables the Debtor to obtain the financing necessary to maintain its operations and pursue reorganization and maximization of value of its estate.

4. In addition, the provisions described in Rule 4001(e)(1)(B)(i)-(xi) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") are set forth at the following sections of the DIP Loan Agreement and/or the Interim DIP Order:

i. ***Grant of Priority or a Lien on Property of the Estate Under § 364(c) or (d)).*** Line Letter, page 1, Interim DIP Order, ¶¶ 4, 8

ii. ***Providing of Adequate Protection or Priority for a Claim That Arose Before the Commencement of the Case, Including the Granting of a Lien on Property of the Estate to Secure the Claim, or the Use of Property of the Estate or Credit Obtained Under § 364 to Make Case Payments on Account of the Claim.*** Interim DIP Order ¶ 8.

iii. ***Determination of the Validity, Enforceability, Priority, or Amount of a Claim That Arose Before the Commencement of the Case, or of Any Lien Securing the Claim.*** Interim DIP Order ¶¶ D, 6.

iv. ***A Waiver or Modification of Code Provisions or Applicable Rules Relating to the Automatic Stay.*** Line Letter, page 2; Interim DIP Order ¶¶ 11, 13.

v. ***A Waiver or Modification of any Entity's Authority or Right to File a Plan, Seek an Extension of Time in which the Debtor has the Exclusive Right to File a Plan, Request the Use of Cash Collateral under § 363(c), or Request Authority to Obtain Credit Under § 364.*** None.

vi. ***Establishment of Deadlines for Filing a Plan of Reorganization, for Approval of a Disclosure Statement, for a Hearing on Confirmation, or for Entry of a Confirmation Order.*** None.

vii. ***A Waiver or Modification of the Applicability of Nonbankruptcy Law Relating to the Perfection of a Lien on Property of the Estate, or on the Foreclosure or Other Enforcement of the Lien.*** Interim DIP Order ¶ 11.

viii. ***A Release, Waiver or Limitation on any Claim or Other Cause of Action Belonging to the Estate or the Trustee, including Any Modification of the Statute of Limitations or Other Deadline to Commence an Action.*** Interim DIP Order ¶¶ D, 6.

ix. ***The Indemnification of Any Entity.*** The Debtor agrees to indemnify and hold harmless the DIP Lender and its affiliates, officers, directors, employees, managers, members, attorneys, agents and representatives (each, an "Indemnified Person"), from and against any and all suits, actions, proceedings, claims, damages, losses, liabilities and expenses (including reasonable attorneys' fees and disbursements and other costs of investigation or defense, including those incurred upon any appeal but excluding loss of anticipated profits) that may be instituted or asserted

5

against or incurred by any such Indemnified Person as the result of credit having been extended, suspended or terminated under the DIP facility and the administration of such credit; provided, that the Debtor shall not be liable for any indemnification to an Indemnified Person to the extent that any such suit, action, proceeding, claim, damage, loss, liability or expense results from the gross negligence or willful misconduct of such Indemnified Person, as determined by a final order of a court of competent jurisdiction. Grid Note, page 7.

x. ***Release, Waiver, or Limitation of Any Right under § 506(c).*** Interim DIP Order ¶ 7.

xi. ***Granting of a Lien on Any Claim or Cause of Action Arising under §§ 544, 545, 547, 548, 549, 553(b), 723(a) or 724(a).*** Interim DIP Order ¶¶ 3, 8.

## BACKGROUND

5. On November 1, 2014 (the "Petition Date"), the Debtor commenced this case (the "Chapter 11 Case") by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor is operating its business and managing its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in this Chapter 11 Case, and no committees have been appointed or designated.

## Jurisdiction

6. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Overview of the Debtor's Business

7. A detailed discussion of the Debtor's history, description of its business, its assets and liabilities, and the events that led to its need for bankruptcy relief are set forth in the Omnibus Declaration filed contemporaneously herewith.

**The Debtor's Debt Structure**

8.     CC Bridge Lender, LLC, an affiliate of Cristina Carlino, holds prepetition senior secured debt of the Debtor in the aggregate principal amount of $7.325 million.  Prior to the Petition Date, the Debtor also sold junior secured debt securities in three (3) different offerings to raise capital for its pre-revenue operations, in the aggregate amount of approximately $19 million (the "Second Lien Secured Debt").  The holders of the Second Lien Secured Debt are affiliates controlled by the Debtor's equity holders.  CC Bridge Lender, LLC also provided additional third lien bridge financing, consisting of $2,211,000 in loans to the Debtor to satisfy its obligations in the ordinary course of business.

9.     As of the Petition Date, the Debtor's prepetition secured obligations total approximately $28,536,000.

**RELIEF REQUESTED**

10.    The Debtor requests that the Court authorize the Debtor to obtain secured, superpriority post-petition financing in the aggregate not to exceed $1,250,000 million pursuant to the terms of this Motion, the DIP Loan Agreement, and the DIP Orders.

11.    The proposed financing will be provided by the DIP Lender.  It will be junior to all obligations owed under the Prepetition Notes.  As such, the liens created under the DIP Loan Agreement are not priming liens with respect to liens currently held by the Prepetition Lenders.

12.    Pending entry of the final order authorizing the DIP Loan Agreement (the "Final DIP Order"), the Debtor requests that the Court authorize the Debtor to (i) borrow up to $375,000 pursuant to the terms of the DIP Loan Agreement; (ii) use cash collateral as provided in the Interim DIP Order; (iii) grant the DIP Lender the liens and superpriority claims described herein; (iv) provide adequate protection as described herein and in the Interim DIP Order; (vi) approve the proposed notice of the Final Hearing; and (vii) schedule the Final Hearing.

**Debtor's Proposed Post-Petition Financing Arrangement**

**A.     Need for Post-Petition Financing**

13.     An immediate need exists for the Debtor to obtain funds from the proposed DIP Facility under the DIP Loan Agreement in order to continue operations and to administer and preserve the value of its estate.  The ability of the Debtor to finance its operations, preserve and maintain the value of its assets and maximize a return for all creditors requires the availability of working capital from the DIP Facility.  The absence of the requested relief would immediately and irreparably harm the Debtor, its estate and creditors and the possibility for a successful sale of the Debtor's assets as a going concern or otherwise.

**B.     Background of the Post-Petition Financing Arrangement**

14.     Prior to the Petition Date, in exploring financing options, the Debtor recognized that the obligations owed to the Prepetition Lenders are secured by virtually all of the Debtor's property, such that either (i) the liens of the Prepetition Lenders would have to be primed to obtain post-petition financing; (ii) a post-petition lender would be required to refinance the obligations owed to the Prepetition Lenders in full and provide additional loan availability; or (iii) the Debtor would have to find a post-petition lender willing to extend credit that would be junior to the Prepetition Lenders' liens.  In view of these circumstances, the DIP Lender is willing to extend junior post-petition financing on the terms and conditions described herein.  The Debtor concluded that the DIP Lender's proposal was desirable because, among other things, it permits the Debtor to secure necessary post-petition financing to continue operations and avoid an extended, contested hearing under section 364(d) of the Bankruptcy Code.

**C.     Negotiations**

15.     The Debtor and the DIP Lender engaged in extensive, arm's-length negotiations with respect to the terms and conditions of the DIP Loan Agreement.  Importantly, the DIP Loan

Agreement provides that the Debtor may draw immediately (on an interim basis) to meet their administrative and operational obligations during the early stages of the Debtor's Chapter 11 Case, a very critical period for preserving going concern values.

16.     The Debtor and the DIP Lender have also agreed upon a budget (as the same may be modified from time to time consistent with the terms of the DIP Financing Agreements, the "Budget") projecting cash flow through January 31, 2014.  The Debtor believes that the Budget is achievable and will allow it to operate and pay its post-petition obligations as they mature.  A copy of the Budget is attached hereto as **Exhibit "D"**.

**D.     Use of Cash Collateral and Proposed Adequate Protection**

17.     In order to address its working capital needs and fund its efforts in this Chapter 11 Case, the Debtor also requires the use of cash collateral of the Prepetition Lenders (the "Cash Collateral").  The use of Cash Collateral will provide the Debtor with the additional necessary capital with which to operate its business, pay its employees, and continue to maintain the going-concern value of their business.

18.     The Prepetition Lenders are entitled, pursuant to sections 361 and 363(e) of the Bankruptcy Code, to adequate protection of their interests in the Debtor's assets to the extent that there is a diminution in the value of such collateral from and after the Petition Date.  As adequate protection for any such diminution in value, the Prepetition Lenders shall be granted, pursuant to sections 361, 363(e), and 364(c) of the Bankruptcy Code, additional and replacement security interests and liens (the "Replacement Liens") in and upon the Collateral, but the Collateral shall not include any proceeds of bankruptcy recoveries under chapter 5 of the Bankruptcy Code (other than proceeds of any avoidance action brought pursuant to section 549 of the Bankruptcy Code and amounts necessary to reimburse the DIP Lender for the amount of the Carve-Out, if

any, used to finance the pursuit of such recovery or settlement with respect to any other recovery or settlement under Chapter 5 of the Bankruptcy Code).

19. The Replacement Liens shall be junior only to the Carve-Out (as defined in the Interim Order), and Permitted Encumbrances (as defined in the Asset Purchase Agreement). The Replacement Liens are and shall be valid, perfected, enforceable, and effective as of the date of the entry of the Interim DIP Order without any further action by the parties and without the necessity of the execution by the Debtor of mortgages, security agreements, pledge agreements, financing statements, or other agreements.

## The DIP Facility Should Be Authorized

20. Approval of the DIP Facility will provide the Debtor with immediate and ongoing access to borrowing availability to pay its current and ongoing operating expenses, including post-petition wages and salaries and utility and vendor costs. Unless these expenses are paid, the Debtor will be forced to cease operations, which would likely (i) result in irreparable harm to their business, (ii) deplete going concern value, and (iii) jeopardize the Debtor's ability to maximize value. The credit provided under the DIP Loan Agreement and the use of Cash Collateral will enable the Debtor to continue to satisfy its vendors, service its customers, pay its employees, and operate its business in the ordinary course and in an orderly and reasonable manner to preserve and enhance the value of its estate for the benefit of all stakeholders. The availability of credit under the DIP Loan Agreement will provide confidence to the Debtor's creditors that will enable and encourage them to continue their relationships with the Debtor. Finally, the implementation of the DIP Loan Agreement will be viewed favorably by the Debtor's vendors, employees, and customers, thereby promoting a successful resolution of this Chapter 11 Case. Accordingly, the timely approval of the relief requested herein is imperative.

21.     Section 364(c) of the Bankruptcy Code provides, among other things, that if a debtor is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, the court may authorize debtors to obtain credit or incur debt (a) with priority over any and all administrative expenses, as specified in section 503(b) or 507(b) of the Bankruptcy Code, (b) secured by a lien on property of the estate that is not otherwise subject to a lien, or (c) secured by a junior lien on property of the estate that is subject to a lien.  11 U.S.C. § 364.  The Debtor proposes to obtain the financing set forth in the DIP Loan Agreement by providing, *inter alia*, superpriority claims, security interests, and liens pursuant to section 364(c)(1), (2), (3) of the Bankruptcy Code.

22.     The Debtor's liquidity needs can be satisfied only if the Debtor is immediately authorized to borrow under the DIP Facility and to use such proceeds to fund its operations.  The Debtor has been unable to procure sufficient financing in the form of unsecured credit allowable under section 503(b)(1), as an administrative expense under section 364(a) or (b), or in exchange for the grant of a superpriority administrative expense claim pursuant to section 364(c)(1).  The Debtor has not been able to obtain post-petition financing or other financial accommodations from any alternative prospective lender or group of lenders on more favorable terms and conditions than those for which approval is sought herein.

23.     Bankruptcy courts grant a debtor considerable deference in acting in accordance with its business judgment.  *See, e.g., Bray v. Shenandoah Fed, Say. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("cases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit parties in interest");

*see also In re Funding Sys. Asset Mgmt. Corp.*, 72 B.R. 87 (Bankr. W.D. Pa. 1987); *In re Curlew Valley Assocs.*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981); *In re Simasko Prod Co.*, 47 B.R. 444, 449 (D. Colo. 1985).

24. Substantially all of the Debtor's assets are encumbered and the Debtor has been unable to procure the required funding absent granting the proposed superpriority claims and liens. The Debtor submits that the circumstances of this case require the Debtor to obtain financing pursuant to section 364(c) of the Bankruptcy Code and, accordingly, the DIP Loan Agreement reflects the exercise of its sound business judgment.

25. The terms and conditions of the DIP Loan Agreement are fair and reasonable, and were negotiated extensively by well-represented, independent parties in good faith and at arms' length. Accordingly, the DIP Lender and all obligations incurred under the DIP Loan Agreement should be accorded the benefits of section 364(e) of the Bankruptcy Code.

## **The Use of Cash Collateral Should Be Approved**

26. Under section 363(c)(2) of the Bankruptcy Code, a debtor in possession may not use cash collateral unless "(a) each entity that has an interest in such cash collateral consents; or (b) the court, after notice and a hearing, authorizes such use . . . in accordance with the provisions of this section." 11 U S.C. § 363(c)(2). The Debtor requires the use of Cash Collateral to fund its day-to-day operations. Indeed, absent such relief, the Debtor's business will be brought to an immediate halt, with damaging consequences for the Debtor and its estate and creditors. The interests of the Prepetition Lenders in the Debtor's Cash Collateral will be protected by the adequate protection set forth above. Accordingly, the Debtor's request to use Cash Collateral in the operation of its business and administration of the Chapter 11 Case should be approved.

### **The Proposed Adequate Protection Should Be Authorized**

27. Section 363(e) of the Bankruptcy Code provides that, "on request of an entity that has an interest in property used . . . or proposed to be used . . . by [a debtor in possession], the court, with or without a hearing, shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). Section 361 of the Bankruptcy Code delineates the forms of adequate protection, which include periodic cash payments, additional liens, replacement liens, and other forms of relief. 11 U.S.C. § 361. What constitutes adequate protection must be decided on a case-by-case basis. *See In re O'Connor*, 808 F.2d 1393, 1396 (10th Cir. 1987); *In re Martin*, 761 F.2d 472 (8th Cir. 1985); *In re Shaw Indus., Inc.*, 300 B R. 861, 865 (Bankr. W.D. Pa. 2003). The focus of the requirement is to protect a secured creditor from diminution in the value of its interest in the particular collateral during the period of use. *See In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) ("The whole purpose of adequate protection for a creditor is to insure that the creditor receives the value for which he bargained prebankruptcy.") (internal citation omitted).

### **The Automatic Stay Should Be Modified on a Limited Basis**

28. The relief requested herein contemplates a modification of the automatic stay (to the extent applicable) to permit the Debtor to (i) grant the security interests, liens, and superpriority claims described above with respect to the DIP Lender, and to perform such acts as may be requested to assure the perfection and priority of such security interests and liens; (ii) permit the DIP Lender to exercise, upon the occurrence of and during the continuance of an event of default (upon five (5) business days' notice of such occurrence), all rights and remedies under the DIP Loan Agreement; and (iii) implement the terms of the proposed DIP Orders.

29. Stay modifications of this kind are ordinary and standard features of post-petition debtor financing facilities and, in the Debtor's business judgment, are reasonable and fair under the present circumstances.

### **Interim Approval Should Be Granted**

30. Bankruptcy Rules 4001(b) and (c) provide that a final hearing on a motion to use cash collateral or obtain credit, respectively, may not be commenced earlier than fourteen (14) days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the use of cash collateral and the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate pending a final hearing.

31. Pursuant to Bankruptcy Rules 4001(b) and (c), the Debtor requests that the Court conduct an expedited preliminary hearing on this motion and (a) authorize the Debtor to use Cash Collateral and borrow under the DIP Facility on an interim basis, pending entry of a final order, in order to (i) maintain and finance the ongoing operations of the Debtor, and (ii) avoid immediate and irreparable harm and prejudice to the Debtor's estate and all parties in interest, and (b) schedule a hearing to consider entry of a final order.

32. The Debtor has an urgent and immediate need for cash to continue to operate. Currently, the Debtor does not have sufficient funds with which to operate its business on an ongoing basis. Absent authorization from the Court to obtain secured credit, as requested, on an interim basis pending a final hearing on the motion, the Debtor will be immediately and irreparably harmed. The availability of interim loans under the DIP Facility will provide necessary assurance to the Debtor's vendors, employees, and customers of its ability to meet its near-term obligations. Failure to meet these obligations and to provide these assurances likely would have a long-term negative impact on the value of the Debtor's business, to the detriment

of all parties in interest. Furthermore, the lack of an interim facility would result in accelerated cash demands on the Debtor. Accordingly, the interim relief requested is critical to preserving and maintaining the going concern value of the Debtor.

33. The Debtor further submits that because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor for the reasons set forth herein, Bankruptcy Rule 6003 has been satisfied.

34. To successfully implement the foregoing, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay under Bankruptcy Rule 6004(h).

## **NOTICE**

35. No trustee, examiner or creditors' committee has been appointed in this Chapter 11 Case. The Debtor will provide notice of this Motion by facsimile and/or overnight mail to: (a) the Office of the United States Trustee for the District of Delaware; (b) each of the Debtor's creditors holding the twenty (20) largest unsecured claims on a consolidated basis; (c) counsel to the DIP Lender; (d) the Prepetition Agents; (e) each of the financial institutions listed in the Debtor's Motion for an Order, Pursuant to Sections 105(a), 345(b), 363(c) and 364(a) of the Bankruptcy Code Authorizing the Debtor to (I) Continue to Use Existing Cash Management System, (II) Maintain Existing Bank Accounts and Business Forms, And (III) Waive Requirements of Section 345(b) of the Bankruptcy Code, (f) all known parties asserting a lien against the Collateral, and (g) any other party that has filed a request for notice pursuant to Bankruptcy Rule 2002 or are required to receive notice under the Bankruptcy Rules, ((a) through (g), the "Notice Parties") As this Motion is seeking first-day relief, notice of this Motion and any order entered hereon will be served on all parties required by Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the

District of Delaware. Due to the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtor respectfully submits that no further notice of this Motion is required.

WHEREFORE the Debtor respectfully request entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: November 1, 2013	**DORSEY & WHITNEY (DELAWARE) LLP**

*/s/ Robert W. Mallard*
Eric Lopez Schnabel (DE Bar No. 3672)
Robert W. Mallard (DE Bar No. 4279)
Alessandra Glorioso (DE Bar No. 5757)
300 Delaware Avenue, Suite 1010
Wilmington, Delaware 19801
Telephone: (302) 425-7171
Facsimile: (302) 425-7177
E-mail: schnabel.eric@dorsey.com
         mallard.robert@dosey.com
         glorioso.alessandra@dorsey.com

**DORSEY & WHITNEY LLP**
John Walshe Murray (CA Bar No. 74823)
[*pro hac vice* application pending]
Stephen O'Neill (CA Bar No. 115132)
[*pro hac vice* application pending]
305 Lytton Avenue
Palo Alto, CA 94301
Telephone: (650) 857-1717
Facsimile: (650) 857-1288
Emails: murray.john@dorsey.com
        oneill.stephen@dorsey.com

*Proposed Attorneys for Archetypes, Inc.*